

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| ANGUS R. FINLAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 10 C 5622 |
| v. ) | |
| ) | The Honorable William J. Hibbler |
| BEAM GLOBAL SPIRITS & WINE, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Angus Finlay brought this lawsuit against his former employer, Defendant Beam Global Spirits & Wine, after Beam cut off his severance benefits and requested that he return the benefits he had already received. Finlay alleges that Beam denied him his benefits in retaliation for Finlay's refusal to sign a false witness statement that Beam wanted to use in its defense of an employment discrimination lawsuit by another employee. He sets forth claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3, the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1132, 1104, & 1140, and the Illinois Whistleblower Act (IWA), 740 Ill. Comp. Stat. 174/20. Beam now moves to dismiss his complaint in its entirety for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the Court denies the motion as to Finlay's Title VII claim, but grants it as to his remaining claims.

## *BACKGROUND*

Finlay alleges the following facts in his complaint, which the Court must accept as true for purposes of the Rule 12(b)(6) motion. *Disability Rights Wisc., Inc. v. Walworth County Bd. of Supervisors*, 522 F.3d 796, 799 (7th Cir. 2008).

From January 2007 through October 31, 2009, Finlay was employed by Beam as its Senior Vice President – Chief Marketing Officer. During his employment, he served nominally as manager for another employee, Anne Cyron, who was based in the United Kingdom. Cyron actually reported to another employee, but did interact with Finlay from time to time. After Finlay terminated his employment, he entered into a written severance agreement pursuant to Beam's Executive Severance Plan, which is governed by ERISA. Pursuant to the agreement, Beam agreed to pay Finlay 18 months of severance benefits, along with some additional sums. Finlay agreed to make himself "available to answer any questions which may arise from time to time regarding matters [Finlay had] worked on during [his] employment...and [to] cooperate in any litigation against or involving" Beam. Beam began paying Finlay his benefits in November 2009.

Also in November 2009, Beam fired Cyron. In response, Cyron filed a claim against Beam in the U.K. alleging gender, age, and nationality discrimination. Finlay had no role in the decision to terminate Cyron and Cyron did not name him in her complaint. In connection with its defense of the complaint, Beam provided Finlay with a witness statement in December 2009 for him to review and sign.

Upon review, Finlay noticed that the witness statement contained multiple false statements. He reported the misstatements to Beam and informed the company that he would not sign the statement until they were corrected. The company then sent Finlay a revised statement, and stated that "[i]t is an important condition of your severance that you support the company in our responses relative to this matter." Finlay reviewed the revised statement and found that it still contained material misstatements. Finlay once again notified Beam, and a Beam representative responded by stating that he did not expect Finlay to lie, but that if Finlay refused

to sign the statement, his situation "might get a lot nastier before it [got] better." Finlay had a number of further communications with Beam in which he stated his willingness to cooperate with Beam's defense of Cyron's claims, but reiterated that he was unwilling to sign a false witness statement. During those communications, Beam indicated that Finlay's version of the facts was "not helping," and that his severance benefits were at risk as a result.

On April 14, 2010, Finlay received a letter from Beam terminating his severance benefits and demanding that Finlay repay the benefits he had already received. At the time, Finlay had received about $500,000 pursuant to his separation agreement, and was set to receive about $300,000 more.

Finlay now claims that Beam's actions not only violated ERISA, which governs the severance plan, but also constituted unlawful retaliation against conduct protected by Title VII and the IWA.

## DISCUSSION

### I. Standard of review

Motions to dismiss test the sufficiency, not the merits, of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss under federal notice pleading, a plaintiff must "provide the grounds of his entitlement to relief" by alleging "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007) (internal quotation marks, brackets, and citation omitted). Specific facts are generally not necessary. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007). The Court treats well-pleaded allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Disability Rights Wisc.*, 522 F.3d at 799.

## II. Analysis

### A. Title VII

Finlay's theory of liability under Title VII is unique. He claims that by refusing to sign a false witness statement that would have been used in defense of a discrimination charge brought under U.K. law, he engaged in conduct protected by Title VII. Title VII protects individuals from retaliation by employers for two types of conduct that are arguably relevant here: (1) "oppos[ing] any practice made an unlawful employment practice" by Title VII; and (2) "ma[king] a charge, testif[ying], assist[ing], or participat[ing] in any matter in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). Finlay's primary argument is that his actions constituted opposition under the first clause, but he does also argue that his actions constituted participation under the second.

Finlay makes a rather perfunctory argument regarding the participation clause in a footnote. However, he fails to explain how his conduct could constitute participation in an "investigation, proceeding, or hearing *under* [Title VII]." *See* 42 U.S.C. § 2000e-3(a) (emphasis added). Cyron brought her claim in the U.K. under U.K. law, and nowhere in his complaint does Finlay allege that there was any ongoing investigation, proceeding, or hearing under Title VII. Thus, Finlay may not proceed under this theory.

Finlay's argument regarding the opposition clause, though novel, is more compelling. The question for the Court is simply whether, by refusing to sign a false witness statement, Finlay can be said to have opposed a practice made illegal by Title VII. The parties spend some time debating whether Title VII makes signing a false statement illegal. Finlay argues that by signing a false statement, he may have helped Beam create a pretextual reason for firing Cyron when it actually was discriminating. Beam counters by noting that while pretext may serve as

4

evidence of discrimination, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804-05, 93 S. Ct. 1817, 1825-26, 36 L. Ed. 2d 668 (1973), creating a pretextual reason for an unlawful employment practice does not itself constitute a violation of Title VII.

This may be true, but Finlay makes an alternative argument that does not require the Court to determine whether the creation of pretext for discrimination is a violation of Title VII. He avers that by refusing to sign the witness statement, he was actually opposing the underlying discriminatory practices against Cyron. In support, he contends first that, while Cyron made her claim under U.K. law, it was reasonable for him to believe that the practices that Cyron complained about – gender, age, and nationality discrimination – constituted unlawful employment practices under Title VII as well. The Court agrees. Given Finlay's allegations about Cyron's suit, the Court finds that it was objectively reasonable for Finlay to believe that her complaint "involve[d] discrimination that is prohibited by Title VII." *See Hamner v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 224 F.3d 701, 707 (7th Cir. 2000) (finding that a sincere and objectively reasonable belief that conduct was violative of Title VII satisfies Title VII's opposition clause). The Court must accept for purposes of the motion to dismiss that Finlay's belief was also sincere. *See id.* (requiring subjectively sincere belief). This is so despite the fact that Finlay indicated his willingness to help Beam defend the suit. A person may participate in a legitimate defense of litigation even if he believes that some of the accusations made in the complaint are true. This is especially true if Finlay simply meant that he was willing to give truthful testimony.

Finlay argues next that the Court can interpret his refusal to sign the witness statement as an act of opposition against Beam's actions towards Cyron. The Court finds that one might reasonably infer such opposition from Finlay's actions. Even if creating pretext for

discrimination does not itself constitute discrimination, Finlay would certainly have made it easier for Beam to get away with its alleged unlawful employment practices if he had signed a false statement that might have provided support for such pretext. By refusing to do so, Finlay may have been indicating his opposition not only to the cover up itself, but to the practices Beam was attempting to cover up. At the motion to dismiss stage, the Court must make such reasonable inferences in Finlay's favor. Moreover, the Court finds that to refuse Finlay's theory would run counter to the purpose of Title VII by allowing employers to use potential retaliation to pressure employees into covering up discrimination. Thus, the Court denies Beam's motion to dismiss Finlay's Title VII claim.

**B. ERISA Claims**

Beam moves to dismiss all of Finlay's ERISA claims due to Finlay's failure to exhaust his administrative remedies. *See Zhou v. Guardian Life Ins. Co. of Amer.*, 295 F.3d 677, 679 (7th Cir. 2002) (holding exhaustion to be a prerequisite to filing suit under ERISA). Finlay does not dispute that he has not exhausted his administrative remedies, but asks the Court to excuse his failure to do so for three reasons.

First, Finlay argues that failure to exhaust administrative remedies is an affirmative defense that is normally not addressed at the motion to dismiss stage. But, Beam counters by correctly noting that Finlay essentially pleaded his failure to exhaust his remedies in his complaint, thus relieving Beam of the responsibility of pleading the defense itself. Thus, the Court will address the issue at this stage.

Second, Finlay notes that it is within the Court's discretion to decide whether or not to require exhaustion. *See Ames v. Amer. Nat'l Can Co.*, 170 F.3d 751, 756 (7th Cir. 1999). He argues that because Beam essentially went back on its word by denying severance benefits after

entering into the separation agreement, this is an appropriate case for the Court to exercise its discretion by allowing him to proceed without exhausting administrative remedies. However, Finlay does not point to a single case suggesting that exhaustion is any less useful when an employer changes its position on an employee's eligibility for benefits. Moreover, the severance plan attached to Finlay's complaint specifically provides Beam with the right to revoke benefits and demand their repayment if the company later discovers information that would have provided a basis for terminating the employee for cause. While the Court is not in a position to decide whether Beam was justified in exercising this right, the provision makes clear that the company's change in position does not necessarily indicate that it acted in bad faith or in some way that might cause the Court to decline to impose the normal requirement of exhaustion upon Finlay.

Third, Finlay argues that exhaustion of administrative remedies would be futile. Courts have granted an exception to the exhaustion requirement when a plaintiff adequately pleads futility. *See, e.g., Ruttenburg v. U.S. Life Ins. Co.*, 413 F.3d 652, 662 (7th Cir. 2005). However, nothing in Finlay's complaint indicates that exhaustion would be futile. Finlay attempts to rely once again on the fact that Beam went back on its promise in the separation agreement and on the fact that Beam interpreted his "appeal" as an original claim. However, as explained above, Beam may have been entitled to change its position on Finlay's eligibility for benefits and Finlay could have used the administrative procedure to prove they were wrong to do so. Beam also seems to have been entitled to interpret Finlay's appeal as a claim for benefits as the severance plan language requires a claim to be filed first when a plan participant believes he has been improperly denied benefits. Thus, it seems Beam was providing Finlay with exactly the sort of chance to challenge the company's decision that was promised in the Plan. For these reasons,

the Court will not excuse Finlay from the exhaustion requirement and grants Beam's motion to dismiss Finlay's ERISA claims.

The Court must also address Beam's arguments that some of Finlay's ERISA claims should be dismissed with prejudice, however. Beam argues first that Finlay's claim that Beam breached its fiduciary duties in violation of 29 U.S.C. § 1104(a)(1) is barred because it seeks relief recoverable under § 1132(a)(1)(B). An individual may seek relief for a breach of fiduciary duty under § 1132(a)(3). *Smith v. Med. Benefit Administrators Group, Inc.*, --- F.3d ----, 2011 WL 913085, *5 (7th Cir. 2011). However, such relief is limited to that which is not available under sections 1132(a)(1)(B) or 1132(a)(2). *Peabody v. Davis*, 636 F.3d 368, 373 (7th Cir. 2011) (citing *Varity Corp. v. Howe*, 516 U.S. 489, 515, 116 S. Ct. 1065, 134 L. Ed. 2d 130 (1996)). Here, Finlay is seeking to recover and maintain possession of his benefits under the plan. This relief is plainly available under § 1132(a)(1)(B) and is therefore unavailable under § 1132(a)(3). Thus, the Court dismisses Finlay's claim that Beam breached its fiduciary duties with prejudice.

Beam also argues that the Court should dismiss Finlay's claim under § 1140 with prejudice. That section states, in relevant part, that "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for the purposes of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. As Beam points out, the Seventh Circuit views § 1140 as an attempt "to protect the employment relationship against actions designed to interfere with, or discriminate against, the attainment of a pension right." *McGath v. Auto-Body North Shore, Inc.*, 7 F.3d 665, 668-69 (7th Cir. 1993) (quoting *Deeming v. Amer. Standard, Inc.*, 905 F.2d 1124, 1127 (7th Cir. 1990)). Here, while Finlay does allege discrimination, he does not

allege that Beam interfered with the employment relationship in order to deny him benefits. Instead, he alleges that Beam discriminated against him by denying him benefits. In other words, the denial was the means by which Beam allegedly discriminated against Finlay, not the by-product or result of its discrimination. Thus, Finlay's claim is adequately covered by § 1132(a)(1)(B) and Finlay's Title VII claim, and does not state claim under § 1140. The Court therefore dismisses Finlay's § 1140 claim with prejudice.

The Court dismisses Finlay's remaining ERISA claims without prejudice so that he may pursue his administrative remedies.

### C. Illinois Whistleblower Act

Finally, Beam moves to dismiss Finlay's IWA claim for a number of reasons. The Court need not address every argument Beam presents because the claim is clearly preempted by ERISA. ERISA contains a preemption provision that states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. 1144(a). The Supreme Court has similarly stated that "[a]ny state-law cause of action that duplicates, supplements, or supplants ERISA's civil enforcement remedy conflicts with clear congressional intent to make that remedy exclusive, and is therefore pre-empted." *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 200-01, 1124 S. Ct. 2488, 2491, 159 L. Ed. 2d 312 (2004). Beam's IWA claim seeks, among other things, payment of his plan benefits. This is exactly the relief ERISA provides in § 1132(a)(1)(B). Clearly, Finlay's claim seeks to duplicate, supplement, or supplant the remedy provided by ERISA. *See McDonald v. Household Intern., Inc.*, 425 F.3d 424, 429 (7th Cir. 2005) (finding preemption where plaintiff's state law claim "focus[ed] on the defendants' failure to give [plaintiff] the benefits under the medical plan that he had been promised").

Finlay's citation to *Angone v. 990 Lake Shore Drive Home Owners Association, Inc.*, 866 F. Supp. 377, 380 (N.D. Ill. 1994), for the proposition that retaliatory discharge claims are not subject to ERISA preemption, does nothing to save his claim. Even if Finlay's IWA claim should arguably be treated the same as a retaliatory discharge claim for these purposes, the claim in *Angone* avoided preemption for a number of reasons, including the fact that it would not require a determination of the benefits due any party under the ERISA plan. *Id.* That is clearly not the case here. Thus, the Court dismisses Finlay's IWA claim with prejudice.

## *CONCLUSION*

For these reasons, the Court DENIES Beam's motion to dismiss Finlay's Title VII claim, but GRANTS Beam's motion as to Finlay's remaining claims. The Court dismisses Finlay's claims under 29 U.S.C. §§ 1132(a)(1)(B) and 1132(c) without prejudice, but dismisses his claims under the IWA and 29 U.S.C. §§ 1132(a)(3) and 1140 with prejudice.

IT IS SO ORDERED.

_5/13/11_
Dated

_Wm. J. Hibbler_
Hon. William J. Hibbler
United States District Court