IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANGUS R. FINLAY, ) | |
| ) | |
| Plaintiff and counter-defendant, ) | |
| ) | Civil Action No.: 10 C 5622 |
| v. ) | |
| ) | |
| BEAM GLOBAL SPIRITS & WINE, INC., ) | Suzanne B. Conlon, Judge |
| ) | |
| Defendant and counter-plaintiff. ) | |
| ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER ON TITLE VII CLAIM

After Angus R. Finlay's former employer, Beam Global Spirits & Wine, Inc. ("Beam"), cut off Finlay's severance benefits and requested the return of benefits he had already received, he sued Beam for retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3 (Count I); violations of the Employee Retirement Income Security Act of 1974 (ERISA) under 29 U.S.C. §§ 1132(c), 1132(a)(1)(B), 1104(a)(1), and 1140 (Count II); and violation of the Illinois Whistleblower Act (IWA), 740 Ill. Comp. Stat. 174/20 (Count III). The ERISA claims under 29 U.S.C. §§ 1132(a)(3) & 1140 and the IWA were dismissed with prejudice. Dkt. No. 25. The ERISA claims under 29 U.S.C. §§ 1132(a)(1)(B) and 1132(c) were dismissed without prejudice, based upon Finlay's failure to exhaust administrative remedies. *Id.* Finlay subsequently exhausted his administrative remedies. Beam counterclaimed for return of overpaid ERISA benefits (Count I) and breach of contract (Counts II and III). Dkt. No. 39. Beam moves for summary judgment on Finlay's Title VII claim (Count I).

## BACKGROUND

The following facts are derived from the parties' Local Rule 56.1 statements and exhibits.

Angus R. Finlay was employed as Beam's senior vice resident and chief marketing officer from January 2007 through October 31, 2009. Def. Facts ¶ 5. In November 2009, Finlay executed a separation agreement and release in exchange for a severance package that included a diverse range of benefits. Def. Facts ¶¶ 6 - 9. As part of this agreement, Finlay promised to cooperate in any litigation against or involving Beam. Def. Facts ¶ 10. The agreement also provided that if Finlay failed to fulfill certain terms and conditions, Beam's payment obligations could be terminated and revoked. Def. Facts ¶¶ 11 - 12.

Finlay supervised Anne Cyron, a marketing employee who was based in the United Kingdom. Def. Facts ¶ 14. In August 2009, Finlay learned that Cyron had been identified for termination as part of a larger company restructuring. Def. Facts ¶ 15. In November 2009, Beam terminated Cyron. Def. Facts ¶ 17. In December 2009, Cyron initiated legal proceedings in the U.K. against Beam and other parties, alleging gender, age, marital status, and nationality discrimination. Def. Facts ¶ 18. Cyron's claims were based on Beam's failure to conduct a redundancy consultation, in which the company would have determined whether her position could have been eliminated without her termination. *Id.*, Pl. Facts ¶ 2.

In connection with defending the Cyron litigation, Beam sought witness statements from a number of its employees and former employees. Def. Facts ¶¶ 19-21. At least three Beam executives provided witness statements: Bill Newlands, U.S. president; Florence Pramberger, formed senior vice president of human resources; and Matthew Shattock, president and CEO. Their statements noted that Finlay had repeatedly indicated that Cyron was unwilling to relocate to the United States. Def. Facts ¶¶ 20, 23, 25. On December 9, 2009, Beam's vice president of human resources, Tom Strehle, sent Finlay a witness statement to review and sign. Def. Facts ¶

2

26. Finlay considered parts of the witness statement inaccurate. Pl. Facts ¶ 19. In particular, Finlay recalled that he had not stated to others at Beam that Cyron would *definitely* not relocate; rather, he had shared a general assumption she likely would not relocate. Pl. Facts ¶ 19. Finlay informed Strehle that contrary to what was indicated in the proposed witness statement, he had never had a formal, direct conversation with Cyron about relocation. *Id.* Finlay told Strehle that the witness statement incorrectly stated that he had been at a meeting in Philadelphia when Cyron was discussed. Pl. Facts ¶ 19.

After discussing these objections, Strehle presented Finlay with a revised witness statement. Def. Facts ¶¶ 27 - 28. Finlay found the revised statement did not remedy his disagreements. Pl. Facts ¶ 20. He perceived the e-mail accompanying the revised statement to be threatening, and his interactions with Strehle were contentious. Pl. Facts ¶¶ 19, 20. Finlay sent an email to Strehle stating, in part: "I am happy to support the company in any way I can. However, the statement does not reflect our conversation of a couple days ago and in signing this it would not be accurate. I can not perjure myself and say or sign something that is not true." Def. Facts ¶ 29. Finlay again told Strehle that he had a *single* conversation with Cyron regarding the topic of her relocation. Pl. Facts ¶ 23. Strehle assured Finlay that he did not expect him to lie. Def. Facts ¶ 30.

On December 18, 2009, Finlay and Strehle again discussed the witness statement. Def. Facts ¶ 32. Finlay was informed that his refusal to sign the statement could threaten his severance benefits and that Beam's legal team was going to take the position that if the company was negligent, it was negligent on account of Finlay. Pl. Facts ¶¶ 20, 22. On December 22, 2009, Finlay sent Strehle another e-mail, in which he stated, "I wanted to reiterate my willingness

to help you and be fully supportive to the company in the matter of Anne Cyron or any other matters that might require my input." Def. Facts ¶ 34. Finlay and Strehle's last communication about the witness statement was on January 29, 2010. Def. Facts ¶ 36. During their conversations about the witness statement, Finlay never indicated that he believed the company had discriminated against Cyron. Def. Facts ¶ 39.

On April 14, 2010, Beam terminated Finlay's remaining severance payments and demanded that he return the previously made payments. Def. Facts ¶ 48. Prior to filing this lawsuit, Finlay never told Strehle or any other current Beam employee that he believed the company had discriminated against Cyron. Def. Facts ¶¶ 38, 39.

## ANALYSIS

Summary judgment is appropriate if the record evidence establishes there is no genuine issue of material fact for trial and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Harris v. Warrick County Sheriff's Dep't*, 666 F.3d 444, 447 (7th Cir. 2012). There is a genuine issue of material fact if the evidence is sufficient to support a reasonable jury verdict in the non-movant's favor. *Pugh v. City of Attica, Indiana*, 259 F.3d 619, 625 (7th Cir. 2001). The mere existence of an alleged factual dispute will not defeat a summary judgment motion if the non-movant has failed to present definite, competent evidence in rebuttal. *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004). Summary judgment for a defendant is appropriate when the plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case as to which he would bear the burden of proof at trial. *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 805-806 (1999). The court considers the record as a whole and draws all reasonable inferences in Finlay's favor. *Franzoni*

*v. Hartmarx Corp.*, 300 F.3d 767, 771 (7th Cir. 2002).

I.     **Finlay's Title VII Retaliation Claim**

Tittle VII protects employees from retaliation for complaining about prohibited discrimination. 42 U.S.C. § 2000e-3(a); *Antonetti v. Abbott Laboratories*, 563 F.3d 587, 592 (7th Cir. 2009). Finlay claims Beam retaliated against him because he opposed discrimination against Cyron. Finlay pursues his claim under the direct method, which requires him to show that he engaged in a statutorily protected activity,[1] that he suffered an adverse action taken by his employer, and the existence of a causal connection between the two. 42 U.S.C. § 2000e-3(a); *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006).

Beam argues that Finlay has not produced evidence that he engaged in a statutorily protected activity.[2] Finlay claims he engaged in protected activity when he refused to sign the witness statement drafted for Beams's use in defending against Cyron's U.K. employment discrimination claim. Beam does not challenge whether Finlay subjectively believed that Cyron had been discriminated against. To constitute protected activity, Finlay must have actually opposed the alleged discrimination by communicating this belief to his employer. *Bernier v. Morningstar, Inc.*, 495 F.3d 369, 375 (7th Cir. 2007). To survive summary judgment, Finlay must produce "evidence from which it could *reasonably* be inferred that [Beam] *more likely than*

---

[1] In previously ruling on Beam Global's motion to dismiss, the court noted that Finlay is unable to proceed under the "participation clause" of 42 U.S.C. § 2000e-3(a), which protects individuals from retaliation by employers for "ma[king] a charge, testif[ying], assist[ing], or participat[ing] in any matter in an investigation, proceeding, or hearing under [Title VII]." This is because there was no ongoing investigation, proceeding, or hearing under Title VII, because Cyron brought her claim in the U.K. under U.K. law. Dkt. No. 26.

[2] Even if Finlay were to pursue his retaliation claim under the indirect method, he would still be required to show that he engaged in statutorily protected activity. *Bernier v. Morningstar, Inc.*, 495 F.3d 369, 375 (7th Cir. 2007).

5

*not* knew" he was opposing discrimination against Cyron. *Miller v. American Family Mut. Ins. Co.*, 203 F.3d 997, 1008 (7th Cir. 2000) (emphases in original).

Finlay claims his refusal to sign the witness statement gave Beam notice of his opposition. However, while Cyron's underlying suit involved charges of discrimination, Finlay never suggested that he believed Beam had taken inappropriate action against Cyron. Def. Facts ¶¶ 39 - 41. Finlay testified that he never told Strehle that he thought Cyron had been discriminated against or was mistreated. *Id.* In fact, Finlay repeatedly indicated that he supported Beam with regard to Cyron's litigation. Def. Facts ¶¶ 29, 34. The only reason Finlay proffered for refusing to sign the statement was his belief that some of the stated facts were inaccurate and he did not want to commit perjury. Def. Facts ¶ 29. Finlay's explicit justification suggested to Beam that his resistence to signing the statement had nothing to do with opposition to the alleged discrimination against Cyron. *See Miller*, 203 F.3d at 1008. The nature of Finlay's perceived witness statement inaccuracies (the extent of his conversations regarding Cyron's relocation and whether he attended a meeting in Philadelphia) do not support a reasonable inference that he was supporting Cyron's U.K. discrimination claims. Finlay is not required to show he explicitly opposed discriminatory activity, but he must have communicated *something* indicative of opposition to Beam. *Id.*

Finlay contends he has produced circumstantial evidence from which a jury could reasonably infer that it was more likely than not that Beam was aware of his opposition to Cyron's treatment. In support of this argument, Finlay lists a number of discussions he had with various Beam employees and former Beam employees: a September 2009 phone call with Beam employees Christopher Peddy and Pramberger, in which the participants expressed general

6

concern about discriminatory elements of the reorganization; a conversation with Beam employee Julian Cohen, in which Cohen expressed his concern about how two U.K. employees had been terminated; and a conversation with Pramberger in December 2009, in which Pramberger again told Finlay that the planned terminations would likely raise discriminatory issues. Pl. Facts ¶¶ 5, 7, 8. Although these conversations might have contributed to Finlay's subjective belief that Cyron was discriminated against, they are irrelevant as to the central issue of whether he conveyed his belief to his employer. None of these conversations had anything to do with Cyron, much less any objections that Finlay might have had to Cyron's treatment. None of these conversations involved opposition to *any* discrimination.

Finlay repeatedly testified that prior to filing this suit, he never communicated to *anyone* employed at Beam that he believed Cyron was the victim of discrimination. The only time Finlay discussed the matter was in January 2010, when he spoke to Pramberger about his understanding that Beam had discriminated against Cyron based on her gender. Pl. Facts ¶ 6; Def. Facts ¶ 21. At that point, Florence Pramberger had not worked at Beam for four months; her last day at Beam was September 31, 2009. Def. Facts ¶ 22. Finlay does not propose any fact, nor does the record suggest, that this isolated exchange with a former Beam employee was conveyed to anyone employed at, or associated with, Beam.

Finlay argues that two cases stand for the proposition that protected activity may occur even when one does not actually complain about the alleged discrimination. *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996), is clearly distinguishable because the plaintiff complained to management about discrimination on numerous occasions. The second case, *Taylor v. ScottPolar Corp.*, 995 F.Supp. 1072 (D. Ariz. 1998), is on point, but has

7

no bearing on this court, particularly in light of subsequent Seventh Circuit decisions that clearly require evidence that an employer must have been aware of the employee's opposition. *Bernier*, 495 F.3d 369 (7th Cir. 2007); *Miller*, 203 F.3d 997 (7th Cir. 2000); *Sitar v. Indiana Dep't of Transp*, 344 F.3d 720 (7th Cir. 2003).

Finally, Finlay suggests that granting summary judgment on his retaliation claim would conflict with the previous denial of Beam's motion to dismiss this claim under Fed. R. Civ. 12(b)(6). Dkt. No. 26. In that ruling the court was required to infer that Finlay's refusal to sign the witness statement might have indicated opposition to the company's alleged discrimination against Cyron. *Id.* at 5-6. Evidence was not considered, but rather the legal sufficiency of the retaliation claim. At summary judgment, a plaintiff must present evidence sufficient to convince a trier of fact to accept its version of the events. *In re Airadigm Communications, Inc.*, 616 F.3d 642, 657 (7th Cir. 2010).

Even if an employee honestly believes that discrimination occurred, retaliation cannot be established as a matter of law if the employer has no knowledge of this belief. *Sitar*, 344 at 727; *cf. Dey v. Colt Const. & Dev. Co.*, 28 F.3d 1446, 1458 (7th Cir. 1994) ("[T]here generally can be no causal link between protected activity and an adverse employment action if the employer remained unaware of the protected activity.") Before his severance plan was terminated, Finlay never expressed any opposition to the company's treatment of Cyron to anyone employed at Beam. The circumstantial evidence he proffers does not support a reasonable inference that Beam had notice that he opposed its treatment of Cyron.

## CONCLUSION

Beam's summary judgment motion on the Title VII retaliation claim is granted.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

May 30, 2012